UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD T. FURNACE,<br><br>  Plaintiff,<br><br>  v.<br><br>CONNIE GIPSON, et al.,<br><br>  Defendants. | CASE NO. 1:14-cv-00814-LJO-MJS (PC)<br><br>**ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND**<br><br>**THIRTY (30) DAY DEADLINE** |

Plaintiff, Edward Terran Furnace, a.k.a. Asar Tauf Shakanasa, is a state prisoner proceeding *pro se* and in *forma pauperis* in this civil rights action brought pursuant to 42 U.S.C. § 1983. Plaintiff has consented to Magistrate Judge jurisdiction.  No other parties have appeared in this action. Plaintiff's complaint is before the court for screening.

I.  **SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous, malicious," or that fail to state a claim upon which

relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

## II. PLAINTIFF'S ALLEGATIONS

Plaintiff's claims can be summarized essentiallyas follows:

Plaintiff is a longtime practitioner of Shetaut Neter, which he describes as "a Black African religion that originated in pre-monumental Kemet or Ancient Egypt well over 10,000 years ago." Adherents of Shetaut Neter, or Neterians, frequently adopt a religious name to affirm their "divine true essential nature and reverence for God." They are also exhorted to follow the "Kemetic" diet, which excludes all animal products and ideally is 80% raw. Neterians worship three times per day, fast on the full moon, and observe several religious holidays throughout the year. Plaintiff has studied Shetaut Neter for two decades and has considered himself a practitioner for fifteen years.

Plaintiff claims Defendants (Connie Gipson, former warden, M. Sexton, deputy warden, and M.S. Robicheaux, a correctional lieutenant) have restricted his ability to practice Shetaut Neter in the Special Housing Unit (SHU) at Corcoran State Prison by frustrating his attempts to change his name and to order specific spiritual items. He also claims he has been denied the opportunity to worship communally with other Neterians, to consult a Neterian chaplain, or to observe Neterian holidays. He requests monetary, injunctive and declaratory relief.

2

### A. Name Change

On July 24, 2013, Plaintiff wrote to Defendant Gipson, then Corcoran's warden, requesting to change his name to Asar Tauf Shakanasa for religious reasons. He explained that "a religious name is an essential and powerful force that links Neterians to the spiritual source and [is] a constant reminder of the true glory of the higher self" and that his "former or committed name [is] offensive to [his] religious beliefs because it represents a badge of being in a spiritually unenlightened state." Plaintiff made clear he did not want his committed name deleted from existing files, but that he be permitted to use his new name in conjunction with his booking number on mail, money orders, medical forms, ID cards, and at the canteen.

Plaintiff references Gipson's "denial" of his name change request several times, but he does not disclose the substance of her response or indicate when she responded. On September 25, 2013, he reiterated his request for a name change in a grievance. This grievance was apparently denied at the first, second, and third levels of review by various correctional staff.

### B. Spiritual Package

On September 7, 2013, Plaintiff also filed a grievance requesting to purchase items to facilitate his Neterian worship as part of his annual "spiritual package." Specifically, Plaintiff requested "vegetarian food items," including "sun-dried fruits, nuts, seeds, breads,…[and] organic food bars," an ankh amulet and chain, a prayer rug, prayer oils, cosmetics, clothing items, shoes, writing materials, and "clean electrical appliances."

CDCR regulations permit inmates to order one 30 lb. package of religious items every year. Items they may order are listed on the standardized "Religious Property

3

Matrix" form.  For inmates like Plaintiff, housed in SHU, permissible items are few: they may have one religious medallion and chain, two items of the particular headgear ssociated with their faith, one set of prayer beads, a prayer mat, a prayer shawl, and one tallit katan or tsitsit.[1]

Defendant Robicheaux denied Plaintiff's religious package request at the first level appeal and Defendant Sexton did so at the second level appeal.  At the third level, however, the request was partially granted:   without permitting or denying particular items, the appeals examiner forwarded Plaintiff's request to the Religious Review Committee, which reviews anomalous requests for religious property and refers them along with  "suggested recommendations of approval/disapproval [and] justification"to the Warden's Advisory Group (Complaint, ECF No. 1, at 30.)  Plaintiff does not appear to have received a response from the RRC.

### C.  Other Claims

Plaintiff alleges that he is not allowed "to partake in religious group worship services with other Neterians on the yard," despite the availability of an appropriate space; that he does not have access to a Neterian minister and that the prison does not recognize Neterian holidays.  He claims that inmates who practice conventional religions have group worship and spiritual guidance, and that their holidays are recognized.  Plaintiff does indicate whether or not he filed a grievance on this issue.

### III. ANALYSIS

Plaintiff alleges that Defendants violated the First and Fourteenth Amendments, as well as the Religious Land Use and Institutionalized Persons Act (RLUIPA) by denying his request for a name change, prohibiting him from ordering Neterian religious

---

[1] Undergarments typically worn by Orthodox Jews.

4

items, failing to recognize Neterian holidays, and restricting his access to group worship and spiritual guidance. He requests declaratory, injunctive, and monetary relief.

The court cannot determine if Plaintiff has stated cognizable claims in connection with the denial of name change and religious property order without information as to how Defendants responded to these requests and a description of the role the requested items play in his religion. Plaintiff also fails to link his allegations regarding the denial of group worship opportunities, holiday recognition, and access to a Neterian chaplain to particular defendants. Therefore, the Court dismisses Plaintiff's complaint, but will give leave to amend to address these deficiencies and meet pleading criteria described in more detail below.

**A. Pleading Standard**

Section 1983 "provides a cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. Graham v. Connor, 490 U.S. 386, 393-94 (1989).

To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cnty., 811 F.2d 1243, 1245 (9th Cir. 1987).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations

are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not. Id. at 677-78.

### B. Name Change

Plaintiff has not stated either a Free Exercise or a RLUIPA claim on the basis of a denial of his name change because he has not alleged facts reflecting that his name change request was actually denied; the Court assumes Plaintiff would not have raised the issue if his request had not been denied, but even assuming it was, he has not set forth the reason, if any, given for the denial so the Court can examine whether the denial lacked penological justification.

#### a. The Free Exercise Standard

To merit protection under the Free Exercise Clause of the First Amendment, a religious claim must satisfy two criteria. First, the belief sought to be exercised must be sincerely held; second, it must be "religious in nature," that is, not rooted in secular philosophical concerns. Shakur v. Schriro, 514 F.3d 878, 883 (9th Cir. 2008); Malik v. Brown, 16 F. 3d 330, 333 (9th Cir. 1994). If these requirements are met, "the adoption of a religious name… is an exercise of religious freedom." Malik, 16 F. 3d at 333; Washington v. Adams, 5975646 WL No. 1:09-cv-01666, at *7 (E.D. Cal. Nov. 29, 2011); Scott v. Cal. S. Ct., 2788346 WL No. CIV S-04-2586, at *7 (E.D. Cal. July 17, 2008).

However, the ability of an inmate to change his name or otherwise exercise his religious beliefs is not without restriction. "Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987)(quoting Price v. Johnston, 334 U.S. 266, 285 (1948)). Thus, prison regulations may lawfully curtail inmates' constitutional rights, provided that the regulations are "reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987). Turner set forth four factors for courts to balance in determining whether a regulation reasonably relates to legitimate penological interests: 1) Whether there is a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it; 2) whether there are alternative means of exercising the right that remain open to prison inmates; 3) whether accommodation of the right would impact guards and other inmates and the allocation of prison resources general; and 4) whether or not there are easy, obvious alternatives to the denial of the right. Turner, 482 U.S. at 89-90; Shakur, 514 F. 3d at 884; Malik, 16 F.3d at 334.

In California, the procedure for an inmate to legally change his name is set forth in CAL. CODE REGS., tit. 15, § 3294.5.  The inmate must submit his name change request directly to the warden.  If the warden denies the request, he or she must respond to the inmate in writing with the reasons for the denial.[2] Courts then apply the Turner factors to determine whether the warden's reasoning comports with the Constitution.

In other name change cases, courts have found that a prison's interest in keeping track of an inmate militates against discontinuing use of his former committed name. Malik, 16 F.3d at 334; Scott, at *6; Ashanti v. CDCR, 520958 WL No. CIV S-03-0474, at

---

[2] If the warden approves the request, it must clear two additional levels of approval before it can be submitted to the court, which has the final say in whether or not to effectuate the name change.

7

*14-*15 (E.D. Cal. Feb. 15, 2007)(prison maintained interest in using original commitment name even after inmate, who changed his name on parole, was recommitted under new religious name).  Nonetheless, the Ninth Circuit has held that prisons lack a legitimate penological interest in preventing an inmate from using his religious name alongside his committed name, finding "that allowing an inmate to use both his religious and committed names is a reasonable middle ground between absolute recognition" of the new name "and the prison interests of order, security, and administrative efficiency." Malik, 16 F.3d at 334 (citations omitted); Babcock v. Clarke, 373 Fed. Appx. 720, 721 (9th Cir. 2010).  Plaintiff, however, is mistaken that he has a "clearly established right" under Ninth Circuit law "to use his religious name and booking number H-33245," without his committed name. See, e.g., Malik v. Clarke, 990874 WL No. C07-5160, at *7 (W.D. Wash. April 13, 2009)(upholding reasonableness of prison's policy of returning mail that did not list plaintiff's committed name).

Here, Plaintiff's letter to Defendant Gipson, included as an exhibit to his Complaint, satisfies the Court that his Neterian beliefs are sincere, and that his desire to change his name is religiously motivated. (He states that he has practiced Shetaut Neter for fifteen years, and has studied its teachings for over twenty.)  By sending the letter, moreover, Plaintiff followed the proper procedure for initiating a name change pursuant to CAL. CODE REGS., tit. 15, § 3294.5.

However, it is not clear to the Court that Warden Gipson actually denied his request.  Although Plaintiff refers several times to Gipson's "denial" of the name change, he does not indicate when (or even if) he received a written denial, he does not include the denial as an exhibit, and he does not describe what reasons, if any, were given for the denial.  If Defendant Gipson denied Plaintiff's name change in writing, Plaintiff should

8

summarize Gipson's reasoning and attach the denial to his amended complaint.  If Plaintiff never received a response from Gipson, he should state so clearly in his amended complaint.

### b. The RLUIPA Standard

RLUIPA was passed, at least in part, to "secure redress for inmates who encounter[] undue barriers to their religious observances." Cutter v. Wilkinson, 544 U.S. 709, 716 (2005).  The Act provides that "no government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution… even if the burden results from a rule of general applicability," unless the government demonstrates that the burden furthers "a compelling governmental interest," and does so by the "least restrictive means." 42 U.S.C. § 2000cc-1(a)(1)-(2); Greene v. Solano Cty. Jail, 513 F.3d 982, 986 (9th Cir. 2008).

An inmate's "religious exercise" refers not to his practice of religion as a whole, but his engagement in particular practices or rituals within his religion. Greene, 513 F.3d at 987.  The practice need not be "compelled by, or central to, a system of religious belief" in order to qualify as a "religious exercise." 42 U.S.C. § 2000cc-5(7)(A); Alvarez v. Hill, 518 F.33d 1152, 1156 (9th Cir. 2008). Thus, a prison can substantially burdens an inmate's exercise when it prevents, prohibits, or punishes engagement in a particular religious activity, even if the inmate remains able to observe other aspects of his religion. See Greene, 518 F.3d at 988 (ban on group worship in maximum security prison constituted substantial burden); Warsoldier v. Woodford, 418 F.3d 989, 996 (9th Cir. 2005)(prison grooming policy substantially burdened exercise of inmate's Native American religion, one tenet of which forbids hair to be cut except upon the death of a close relative); Rouser v. White, 630 F.Supp. 2d 1165, 1182 (E.D. Cal. 2009)(formal and

informal policies that impaired Wiccan inmate's group worship constituted substantial burden); Davis v. Powell, 901 F. Supp. 2d 1196, 12290 (S.D. Cal. 2012)(temporary ban on prayer oil substantially burdened inmate's practice of Islam).

Although prison security is a compelling interest, prison officials may not "justify restrictions on religious exercise simply by citing to the need to maintain order and security," even in a maximum-security prison. Greene, 513 F.3d at 989-990. To the contrary, Prison officials must show that they "actually considered and rejected the efficacy of less restrictive measures before adopting the challenged practice." Greene, 513 F. 3d at 989 (quoting Warsoldier, 418 F.3d at 999).

As Malik v. Brown held in the First Amendment context, using a spiritual name is a "religious exercise," and therefore the kind of activity that RLUIPA protects. Malik, 16 F.3d at 333; see also Muttawakkil v. Huibregtse, 735 F.3d 524, 527 (7th Cir. 2013). A thornier question is whether the denial of a formal name change imposes a substantial burden on such exercise. Muttawakkil suggested, without addressing the question directly, that denying a formal name change could give rise to a RLUIPA claim for an inmate whose religion "call[ed] for use of a religious name only," 735 F.3d at 527. No published opinions in the Ninth Circuit have addressed this issue. Scott v. California Supreme Court, an unpublished 2008 District Court decision, concluded that denial of a name change did not amount to a substantial burden because plaintiff there did not suggest that "he [would] not be able to participate in religious ceremonies with his given name, or that an unchanged name would subject him to ostracism from his co-believers, or that he [could] not 'rise through the ranks' of his religion." 2008 WL 2788346, at *10.

Scott, however, did not consider the effect of Greene, which had been decided only a few months earlier. Greene instructs courts to focus not on the overall effect of a

10

prison regulation on an inmate's religious life, but on the consequences for the particular religious practice sought to be exercised, in this case, the use of a spiritual name. See 513 F.3d at 988.  Under Greene, blocking one avenue of religious expression constitutes a substantial burden, even if other avenues remain open. Id.; Davis, 901 F. Supp. 2d at 1230.  Moreover, a complete prohibition is more offensive to RLUIPA than a mere restriction: as the Ninth Circuit held in Greene, "We have little difficulty in concluding that an outright ban on a particular religious exercise is a substantial burden on that religious exercise." 513 F.3d at 988. From this standpoint, a blanket denial of a name change could amount to just such an "outright ban."

However, as described above, Plaintiff has not provided evidence either of the denial itself or of the compelling penological interests, if any, Gipson invoked to justify it. The court will give Plaintiff leave to amend his complaint to provide such information.

**C. Religious Property Request**

Similar problems attend Plaintiff's Free Exercise and RLUIPA claims regarding the alleged denial of his religious property request.  He has neither provided enough information about the RRC's ultimate response to his request, nor sufficiently explained the role of each requested item in the exercise of his religion.

    **a. Free Exercise**

Like denials of name change requests, the denial of an inmate's request for religious property may violate his free exercise rights, provided the request was motivated by a sincerely held religious belief. See, e.g., Rouser v. White, 630 F.Supp.2d 1165, 1189-1190 (E.D. Cal. 2009)(prohibition on possession of candles, incense and Tarot cards potentially violates Wiccan inmate's ability to exercise his beliefs freely); Oliverez v. Albitre, 3778861 WL No. 1:09-cv-00352, at *10 (E.D. Cal. Aug. 31,

11

2012)(arbitrary refusal to give plaintiff his prayer oil potentially infringes on his Free Exercise rghts); Buckley v. Alameida, 1100613 WL No. 1:04-cv-05688, at *7 (confiscation of kosher food package implicated Free Exercise clause).  Inmates retain a right to possess religious property even when they are housed in SHU or administrative segregation. Rouser, 630 F. Supp. 2d at 1188 (confiscation of Witches' Bible from inmate in disciplinary segregation potentially "impinged on [his] ability to freely exercise his religion."); Wright v. Smith, 3787528 WL No. 1:10-cv-00011, at *1, *8 (E.D. Cal. July 18, 2013)(claim that plaintiff was deprived of "siddur/prayer book, tallit/prayer shawl, yarmulke/religious head covering, and religious literature including scripture" while housed in SHU survived motion to dismiss).

Like name changes, however, restrictions on the possession of religious property are analyzed under the Turner framework, and will be upheld if they are justified by a legitimate penological interest.  Naturally, the penological interest at stake will depend on the item the inmate is requesting. See, e.g., Rouser, 630 F.Supp.2d at 1189-1190 (restrictions on candles and Tarot cards potentially justified by interest in preventing fires and gambling, respectively); Lewis v. Ollison, 571 F.Supp.2d 1162, 1172 (C.D. Cal. 2008)(restrictions on prayer oil justified by institutional interest in curbing trade in contraband).

**b. RLUIPA**

A prison's denial of access to religious items may also give rise to a valid RLUIPA claim. Rouser, 630 F.Supp. 2d at 1181-1182; Davis, 901 F.Supp.2d at 1229-1230. Courts focus on the plaintiff's perception of the necessity of the items to his religious practice, not on his ability, strictly speaking, to worship without them. Rouser, 630 F.Supp. 2d at 1182(locker policy that prevented Wiccans from accessing religious items

12

for group worship amounted to substantial burden); Davis, 901 F.Supp. at 1230(ban on prayer oil, which Plaintiff asserted was mandated by his faith, substantially burdened practice of Islam); Adler v. Gonzalez, No. 1:11-cv-1915 WL 2385137, at *2 (E.D. Cal. May 30, 2013)(prison officials' denial of Bible and rosary imposed substantial burden on Catholic inmate's exercise).

Here, Plaintiff requested numerous items, including foodstuffs, an amulet and chain, a prayer rug, prayer oil, unspecified items of clothing, shoes, writing materials, and "clean appliances." While Plaintiff has sufficiently alleged the sincerity of his Neterian beliefs generally, he has not shown that his request for each item listed was motivated by his faith. In particular, Plaintiff demonstrates no connection between his religion and his need for "clothes, cosmetics, shoes, writing materials, and clean appliances." Materials in his complaint do describe the "basic necessity" of vegetarian food, a prayer rug, an amulet, and prayer oil for "effective worship" as a Neterian, and Plaintiff does claim that "not having access" to the requested items has "made his religious exercise significantly difficult." However, a bare statement of necessity without elaboration as to *why* they are necessary, that is, what role they play in his worship and how their absence has impaired his religious practice, leaves the cognizability of the claim unclear to the court.

Evidence that Plaintiff's religious property request was in fact denied is also necessary to state cognizable Free Exercise and RLUIPA claims. Plaintiff's grievance on the issue was partially granted, and his request forwarded to the Religious Review Committee. Plaintiff should describe and/or include the RRC's response in his amended complaint. If he did not receive a response, he should so state.

**C. Equal Protection**

13

Plaintiff has failed to state sufficient facts to establish that defendants violated his Equal Protection rights under the Fourteenth Amendment by denying his name change or his religious property request.

Behind bars, the Equal Protection Clause of the Fourteenth Amendment affords a prisoner "a reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts." Shakur v. Schriro, 514 F.3d 878, 891 (9th Cir. 2008)(quoting Cruz v. Beto, 405 U.S. 319, 322 (1972)). However, prisons "are not required to provide identical accommodations to inmates of every religious persuasion." Rouser, 630 F.Supp. 2d at 1200(citing Cruz, 405 U.S. at 322 n.2). To make an Equal Protection claim, an inmate must show that the prison treated him differently from a similarly situated class, raising an inference of discriminatory purpose. Shakur, 514 F.3d at 891; Rupe v. Cate, 688 F.Supp. 2d 1035, 1049 (E.D. Cal. 2010). In society at large, the government could not disfavor Plaintiff because of his Neterian beliefs absent a compelling state interest. See DeHart v. Horn, 227 F.3d 47, 61 (3d Cir. 2000). In prison, however, the Turner test applies, and an inmate's Equal Protection claim only succeed where the prison's disparate treatment was not "reasonably related to legitimate penological interests." Shakur, 514 F.3d at 891; see also Rupe, 688 F.Supp. 2d at 1049. Allegations of disparate treatment, however, cannot be merely conclusory; they must have some specificity and factual support. See Rouser, 630 F.Supp.2d at 1200; Adler, No. 1:11-cv-1915 WL 2385137, at *4.

Here, Plaintiff alleges he is a member of a protected class of Neterians, but his allegations of disparate treatment are not sufficiently specific to allow the Court to find his Equal Protection claim cognizable. With regard to the name change, he states that "other inmates within CDCR and throughout the nation who are in custody and practicing

conventional religious precepts are allowed to use their religious names and receive all of the normal incidents of recognition." (Complaint, ECF No. 1, at 10). Similarly, with respect to the spiritual package, he states that he was not allowed to possess items for effective worship, while "inmates practicing conventional religious precepts…enjoy these practices." (Complaint, ECF No. 1, at 11).  However, he provides no factual allegations that suggest either claim is based upon anything other than pure speculation on his part. See Adler, No. 1:11-cv-1915 WL 2385137, at *4.  In the absence of this required factual basis, his Equal Protection claims must fail.

### B. Linkage

Plaintiff has failed to state a First Amendment, RLUIPA, or Equal Protection claim regarding the alleged denial of group worship opportunities, access to a chaplain, and holiday observances because he has not linked the denial to a particular defendant.

Under § 1983, Plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. Iqbal, 556 U.S. at 676-77; Simmons, 609 F.3d at 1020-21; Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).  Liability may not be imposed on supervisory personnel under the theory of *respondeat superior*, as each defendant is only liable for his or her own misconduct. Iqbal, 556 U.S. at 676-77; Ewing, 588 F.3d at 1235. Supervisors may only be held liable if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); accord Starr v. Baca, 652 F.3d 1202, 1205-08 (9th Cir. 2011); Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009); Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1182 (9th Cir. 2007); Harris v. Roderick, 126 F.3d 1189, 1204 (9th Cir. 1997).

Here, Plaintiff has failed to state which individuals he believes are responsible for not allowing group Neterian worship, preventing consultations with a Neterian minister, or impeding observance of Neterian holidays.  He merely refers to "defendants."  If Plaintiff meant to suggest that Defendants Sexton, Robicheaux, and Gipson, directly participated in the violations, he should  clearly explain their individual involvement in his amended complaint.  However, Plaintiff may not simply assert his claim against Warden Gipson as ultimate supervisor, unless, as aforementioned, he believes she "participated directly in the violations, or knew of the violations and failed to act to prevent them." Taylor, 880 F.2d at 1045.

**IV. CONCLUSION**

Plaintiff's complaint fails to plead sufficient facts to state Free Exercise, RLUIPA, or Equal Protection claims against Defendants for denying Plaintiff's name change or his religious property request.  Plaintiff has also failed to state Free Exercise, RLUIPA, or Equal Protection claims based on the denial of group worship, access to a Neterian chaplain, or observance of Neterian holidays because he has not linked this denial to particular defendants.

The Court grants Plaintiff the opportunity to correct the deficiencies analyzed above in an amended complaint.  See Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000); Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).  If Plaintiff amends, he may not change the nature of this suit by adding new, unrelated claims in his amended complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007)(no "buckshot" complaint).

An amended complaint would supersede the prior complaint. Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 f.2d 565, 567 (9th

Cir. 1987). Thus, it must be "complete in itself without reference to the prior or superseded pleading." Local Rule 220.

IT IS SO ORDERED.

Dated:    January 20, 2015              /s/ *Michael J. Seng*
                                        UNITED STATES MAGISTRATE JUDGE