1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

EDWARD T. FURNACE,

            Plaintiff,

    v.

CONNIE GIPSON, et al.,

            Defendants.

CASE NO. 1:14-cv-00814-LJO-MJS (PC)

**FINDINGS AND RECOMMENDATIONS:**

**1) FOR SERVICE OF COGNIZABLE FIRST AMENDMENT CLAIMS, AND**

**2) TO DISMISS REMAINING CLAIMS WITH PREJUDICE**

**(ECF No. 24)**

**FOURTEEN (14) DAY OBJECTION DEADLINE**

       Plaintiff, Edward Terran Furnace, a.k.a. Asar Tauf Shakanasa, is a state prisoner proceeding *pro se* and in *forma pauperis* in this civil rights action brought pursuant to 42 U.S.C. § 1983. Plaintiff has declined Magistrate Judge jurisdiction. (ECF No. 10.) No other parties have appeared in this action. The Court previously found some of Plaintiff's First Amendment claims to be cognizable. (ECF No. 23.) Plaintiff's Second Amended Complaint (ECF No. 24) is before the Court for screening.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.      SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous, malicious," or that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

## II. PLAINTIFF'S ALLEGATIONS

Plaintiff's claims can be summarized essentially as follows:

Plaintiff is a longtime practitioner of Shetaut Neter, "a Black African religion that originated in pre-monumental Kemet or Ancient Egypt well over 10,000 years ago." Adherents of Shetaut Neter, or Neterians, frequently adopt a religious name to affirm their "divine true essential nature and reverence for God." They are also exhorted to follow a diet that excludes animal products and ideally is 80% raw.  Neterians worship three times per day, fast on the full moon, and observe several religious holidays throughout the year. Plaintiff has studied Shetaut Neter for two decades.

Plaintiff claims Defendants restricted his ability to practice Shetaut Neter in the Special Housing Unit (SHU) at Corcoran State Prison by frustrating his attempts to change his name and order religious property.  He requests monetary, injunctive and declaratory relief.

2

Plaintiff is now incarcerated at Kern Valley State Prison (KVSP). He alleges he could be returned to Corcoran if revalidated as an associate of the Black Guerilla Family gang. Records with his complaint indicate that he has been disciplined at KVSP for possessing gang-related imagery.

### A.  Name Change

Plaintiff wrote to Defendant Gipson, then Corcoran's warden, requesting to change his name to Asar Tauf Shakanasa for religious reasons.  He explained that "a religious name is an essential and powerful force that links Neterians to the spiritual source and [is] a constant reminder of the true glory of the higher self" and that his "former or committed name [is] offensive to [his] religious beliefs because it represents a badge of being in a spiritually unenlightened state." He also indicates that his committed name is a badge and incident of slavery.

Warden Gipson denied Plaintiff's name change on the grounds of institutional security, adding, without elaboration, that "based on [Plaintiff's] commitment offenses and the victim notification requirement, it would not be in the prison's best interest to change [his name]."

Plaintiff subsequently grieved Gipson's denial; the appeals coordinators Kimbrell, Swift, and Allen invoked Gipson's reasoning to deny Plaintiff's appeal at all levels.

### B. Spiritual Package

Plaintiff also filed a grievance requesting to purchase items to facilitate his Neterian worship as part of his annual "spiritual package."  Specifically, Plaintiff requested "vegetarian food items," including "sun-dried fruits, nuts, seeds, breads,…[and] organic food bars," an ankh amulet and chain, a prayer rug, prayer oils, cosmetics, clothing items, shoes, writing materials, and "clear electrical appliances."

CDCR regulations permit inmates to order one 30 lb. package of religious items every year. Items they may order are listed on the standardized "Religious Property Matrix" form. Inmates in SHU are permitted to possess a religious medallion and chain, and a prayer mat.

Defendant Robicheaux denied Plaintiff's religious package request at the first level and Defendant Sexton did so at the second level. Without permitting or denying particular items, Plaintiff's request was forwarded at the third level to the Religious Review Committee (RRC). Defendant Graves of the RRC recommended denying the request, and the Warden's Advisory Group affirmed the denial. However, both the RRC and the WAG only seem to have considered Plaintiff's request for food items, concluding that 30 lbs. of dried fruits and vegetables exceeded allowable amounts, but not addressing whether the other items, or a smaller quantity of dried fruits and vegetables, were allowed. The denial based on the weight of the fruits and vegetables was affirmed in an amended second-level response by Defendant Graves. Plaintiff indicates that he received none of the items requested.

**III. ANALYSIS**

Plaintiff alleges that Defendants violated the First and Thirteenth Amendments, as well as the Religious Land Use and Institutionalized Persons Act (RLUIPA) by denying his request for a name change and prohibiting him from ordering religious items. The Court previously found that Plaintiff had stated a cognizable First Amendment claim based on denial of his requested name change denial and now finds that he states a First Amendment claim based on denial of his request for religious materials. Absent more than a mere possibility he may be returned to Corcoran SHU, he fails to state a claim under RLUIPA and absent facts supporting racial discrimination, he fails to state a

4

1
2
claim under 42 U.S.C. § 1981.  The Court recommends ordering service of Plaintiff's
cognizable claims and dismissal of the remaining claims with prejudice.

3
4
## A. Pleading Standard

5
6
7
Section 1983 "provides a cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983).

8
9
10
Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. Graham v. Connor, 490 U.S. 386, 393-94 (1989).

11
12
13
14
15
16
To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cnty., 811 F.2d 1243, 1245 (9th Cir. 1987).

17
18
19
20
21
22
23
24
25
26
27
A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not. Id. at 677-78.

28

1

**B. First Amendment – Free Exercise**

2

To merit protection under the Free Exercise Clause of the First Amendment, a

3

religious claim must satisfy two criteria. First, the belief sought to be exercised must be

4

sincerely held; second, it must be "religious in nature," that is, not rooted in secular

5

philosophical concerns.  Shakur v. Schriro, 514 F.3d 878, 883 (9th Cir. 2008); Malik v.

6

Brown, 16 F. 3d 330, 333 (9th Cir. 1994).  However, the ability of an inmate to exercise

7

his religious beliefs is not without restriction. "Lawful incarceration brings about the

8

necessary withdrawal or limitation of many privileges and rights, a retraction justified by

9

the considerations underlying our penal system." O'Lone v. Estate of Shabazz, 482 U.S.

10

342, 348 (1987)(quoting Price v. Johnston, 334 U.S. 266, 285 (1948)). Thus, prison

11

regulations may lawfully curtail inmates' constitutional rights, provided that the

12

regulations are "reasonably related to legitimate penological interests." Turner v. Safley,

13

482 U.S. 78, 89 (1987).

14

Turner set forth four factors for courts to balance in determining whether a

15

regulation reasonably relates to legitimate penological interests: 1) Whether there is a

16

valid, rational connection between the prison regulation and the legitimate governmental

17

interest put forward to justify it; 2) whether there are alternative means of exercising the

18

right that remain open to prison inmates; 3) whether accommodation of the right would

19

impact guards and other inmates and the allocation of prison resources general; and 4)

20

whether or not there are easy, obvious alternatives to the denial of the right. Turner, 482

21

U.S. at 89-90; Shakur, 514 F. 3d at 884; Malik, 16 F.3d at 334.

22

**1.  Name Change**

23

"[T]the adoption of a religious name… is an exercise of religious freedom." Malik,

24

16 F. 3d at 333; Washington v. Adams, 5975646 WL No. 1:09-cv-01666, at *7 (E.D. Cal.

25

26

27

28

6

1   Nov. 29, 2011); <u>Scott v. Cal. S. Ct.</u>, 2788346 WL No. CIV S-04-2586, at *7 (E.D. Cal.

2   July 17, 2008).  Moreover, in <u>Malik v. Brown</u>, the Ninth Circuit applied the <u>Turner</u> factors

3   to conclude that prohibiting an inmate from using his religious name alongside his

4   committed name violated his Free Exercise rights. 16 F.3d at 334 (First Amendment right

5   to use both religious and committed names on correspondence and other documents

6   was "violated by any prison regulation to the contrary or by contrary enforcement of an

7   ambiguous regulation.")  The Court found that prisons have no legitimate penological

8   interest in preventing him an inmate from using his religious and committed names

9   together, and that the two-name solution is an "obvious, easy alternative" to phasing out

10  the committed name or prohibiting any use of the religious name. <u>Malik</u>, 16 F.3d at 334;

11  <u>see also</u> <u>Scott</u>, at *6; <u>Ashanti v. CDCR</u>, No. CIV S-03-0474 2007 WL  520958, at *14-*15

12  (E.D. Cal. Feb. 15, 2007). Thus, "allowing an inmate to use both his religious and

13  committed names is a reasonable middle ground between absolute recognition" of the

14  new name "and the prison interests of order, security, and administrative efficiency."

15  <u>Malik</u>, 16 F.3d at 334 (citations omitted); <u>Ashanti</u>, 2007 WL  520958, at *13.

16          Plaintiff has stated a cognizable First Amendment claim on the basis of the denial

17  of his name change request.  Plaintiff has pleaded that his Neterian beliefs are sincere,

18  and that his desire to change his name is religiously motivated; by writing to Warden

19  Gipson, moreover, he followed the proper procedure for initiating a name change

20  pursuant to Cal. Code Regs., tit. 15, § 3294.5.

21          Defendants' denial of the request for "reasons pertaining to institutional security,"

22  meanwhile, does not comport with <u>Malik</u>.  The law is well-settled that allowing an inmate

23  to use both a religious and a given name can satisfy his First Amendment rights without

24  compromising security.  See <u>Malik</u>, 16 F.3d at 334.  Here, Plaintiff specified that he was

25

26

27

28

7

not "ask[ing] for [his] committed name to be deleted from existing files or for those files to be reorganized" and that he would be content using his "religious name at least in conjunction with [his] committed name and identification number." (ECF No. 22, at 7). However, the Defendants denied his request without addressing the possibility that Plaintiff could use two names.  Without considering a two-name solution, Defendants' reasoning for the denial does not survive application of the <u>Turner</u> factors.

### 2.  Religious Property Request

The denial of an inmate's request for religious property may violate his free exercise rights where the request was motivated by a sincerely held religious belief. <u>See, e.g.</u>, <u>Rouser v. White</u>, 630 F.Supp.2d 1165, 1189-1190 (E.D. Cal. 2009)(prohibition on possession of candles, incense and Tarot cards potentially violates Wiccan inmate's ability to exercise his beliefs freely); <u>Oliverez v. Albitre</u>, 3778861 WL No. 1:09-cv-00352, at *10 (E.D. Cal. Aug. 31, 2012)(arbitrary refusal to give plaintiff his prayer oil potentially infringes on his Free Exercise rights); <u>Buckley v. Alameida</u>, 1100613 WL No. 1:04-cv-05688, at *7 (confiscation of kosher food package implicated Free Exercise clause). Inmates retain a right to possess religious property even when they are housed in SHU or administrative segregation. <u>Rouser</u>, 630 F. Supp. 2d at 1188 (confiscation of Witches' Bible from inmate in disciplinary segregation potentially "impinged on [his] ability to freely exercise his religion."); <u>Wright v. Smith</u>, 3787528 WL No. 1:10-cv-00011, at *1, *8 (E.D. Cal. July 18, 2013)(claim that plaintiff was deprived of "siddur/prayer book, tallit/prayer shawl, yarmulke/religious head covering, and religious literature" in SHU survived motion to dismiss).

Like name changes, restrictions on the possession of religious property are analyzed under the <u>Turner</u> framework, and will be upheld if they are justified by a

legitimate penological interest.  The penological interest at stake depends on the item

the inmate is requesting.  See, e.g., Rouser, 630 F.Supp.2d at 1189-1190 (restrictions on

candles and Tarot cards potentially justified by interest in preventing fires and gambling,

respectively); Lewis v. Ollison, 571 F.Supp.2d 1162, 1172 (C.D. Cal. 2008)(restrictions

on prayer oil justified by institutional interest in curbing trade in contraband).

Although Plaintiff originally based his First Amendment claim on the denial of

numerous items, he now focuses on four particular items – an ankh, a prayer mat,

cleansing oil, and various dried fruits – the denial of which adversely affected his

religious practice.  For screening purposes, the Court finds that Plaintiff's request for

these items was motivated by sincere religious belief: he describes in some detail the

role each item plays in his worship. (ECF No. 24, at 15.)  In addition, the denial of these

items does not appear from the pleading to be supported by a legitimate penological

interest.  The Religious Property Matrix that Plaintiff included with his original complaint

expressly permits inmates in SHU to possess an ankh and a prayer mat.  The denial of

Plaintiff's religious package request does not offer penological reasons for the denial of

these or the other items: it states that 30 lbs of dried fruits and vegetables exceeds

prison guidelines, but does not address the permissibility of a lesser amount of fruit or of

the other items. Therefore, the Court finds that Plaintiff has adequately stated a First

Amendment claim on the basis of the denial of the ankh, the prayer mat, the oil, and the

dried fruit.

**C.  RLUIPA**

RLUIPA only authorizes official capacity suits against government employees for

prospective, injunctive relief.  Sossamon v. Texas, 131 S. Ct. 1651, 1660 (2011);  Wood

v. Yordy, 753 F.3d 899, 902-04 (9th Cir. 2014). Where an inmate has been transferred

from the institution where his claims arose, he may only bring suit under RLUIPA if he has a reasonable likelihood of being transferred back.  See City of Los Angeles v. Lyons, 461 U.S. 95, 102-05 (1983); Preiser v. Newkirk, 422 U.S. 395, 402-03 (1975); Johnson v. Moore, 948 F.2d 517, 519 (9th Cir. 1991); Andrews v. Cervantes, 493 F.3d 1047, 1053 n.5 (9th Cir. 2007).

Here, Plaintiff has been transferred from Corcoran SHU, where his claims arose, to KVSP.  He indicates he was originally placed in SHU after being validated as an associate of the Black Guerilla Family (BGF), and that, since his transfer from SHU, officials at KVSP have been trying to re-validate him. He includes records of disciplinary proceedings from KVSP finding him guilty of possession of BGF imagery and symbols. However, the disciplinary hearing resulted in only temporary loss of privileges and continued monitoring of Plaintiff's activities.  Although Plaintiff was warned that his behavior could be considered "for possible placement in the Step Down program," his concerns about a return to Corcoran SHU appear at this juncture to be wholly speculative. The Court finds that Plaintiff has not pleaded facts showing a reasonable likelihood of his being returned to Corcoran SHU. Accordingly, he has not pleaded a basis for prospective relief under RLUIPA.

**D.  Thirteenth Amendment**

Plaintiff also fails to state a Thirteenth Amendment Claim.

Section Two of the Thirteenth Amendment "clothe[s] 'Congress with power to pass all laws necessary and proper for abolishing all badges and incidents of slavery in the United States.' " Jones v. Alfred H. Mayer Co., 392 U.S. 409, 439 (1968) (quoting The Civil Rights Cases, 109 U.S. 3, (1883)) (emphasis omitted).  There is no direct private right of action to redress alleged "badges and incidents of slavery" under this

section; instead, "suits attacking the 'badges and incidents of slavery' must be based on a statute enacted under § 2." Channer v. Hall, 113 F.3d 214, 217 n. 5 (5th Cir. 1997); see also United States v. Nelson, 277 F.3d 164, 84 (2d Cir. 2002).  Typically, discrimination-based "badges and incidents" suits are brought under 42 U.S.C. § 1981, which provides, in relevant part, that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." 42 U.S.C. § 1981; Channer, 113 F.3d at 217 n. 5; Nelson, 277 F.3d at 184.  An essential element of a § 1981 claim is that "defendants must have acted with the intent to discriminate on the basis of race." Dennis v. Thurman, 959 F.Supp. 1253, 1263 (C.D. Cal. 1997)(citing Gen. Bldg. Contractors Assoc. v. Pennsylvania, 458 U.S. 375, 391 (1982)).

Although the Court will treat Plaintiff's Thirteenth Amendment claims as though they had been brought under § 1981, doing so does not salvage them from non-cognizablility.  Plaintiff provides no factual support for his allegations of widespread racial discrimination by Defendants. Instead, Plaintiff makes broad statements about the enduring legacy of slavery in America which, even if accepted as true, have little relevance to Defendants' conduct.  The Court may impose liability for individuals' intentionally discriminatory acts or omissions, *not* for the unfortunate but nebulous effects of "a biased political system designed to empower white people" or "inequalities that arose during American chattel slavery." (ECF No. 24, at 11, 14.)  The responses to Plaintiff's administrative appeals do not offer overtly racist or discriminatory reasons for denying Plaintiff's requests, and Plaintiff does not indicate that Defendants made racist

11

or discriminatory remarks to him such as to suggest that these "official" reasons were pretextual.  Similarly, Plaintiff does not make any particularized allegations that only black inmates are unable to change their names or obtain religious property.  Therefore, the Court finds that Plaintiff fails to state a discrimination claim under § 1981.

**IV. CONCLUSION**

The Court FINDS that Plaintiff's Second Amended Complaint states valid Free Exercise against Defendants Gipson, Kimbrell, Swift and Allen for their denial of his name change request, and against Gipson, Robicheaux, Graves, and Sexton for denial of the religious property request.  He fails to state a claim on any other basis.

Based on the foregoing, the Court HEREBY RECOMMENDS:

1.    Plaintiff be permitted to proceed on the Second  Amended Complaint's First Amendment claims against Defendants Gipson, Kimbrell, Swift, Allen, Robicheaux, Graves, and Sexton for denial of the name change and religious property request;

2.    All other claims asserted in the First Amended Complaint and all other named Defendants should be dismissed with prejudice;

3.    Service should be initiated on the following Defendants:

Connie Gipson, former warden, Corcoran; Kimbrell, Litigation Coordinator; Swift, Chief Deputy Warden-Administration, Corcoran; Allen, Appeals Examiner; Robicheaux, Correctional Lieutenant; Graves, CRM(A); and Sexton, Chief Deputy Warden-Operations, Corcoran.

4.    The Clerk of Court should send Plaintiff seven (7) USM-285 forms, (7) summonses, a Notice of Submission of Documents form, an instruction sheet, and a copy of the Second Amended complaint, filed May 13, 2015;

5.      Within thirty (30) days from the date of adoption of these Findings and Recommendations, Plaintiff should complete a return to the Court the notice of submission of documents along with the following documents:

     a. Seven (7) completed summonses,

     b. Seven (7) completed USM-285 form for each Defendant listed above,

     c. Eight (8) copies of the endorsed Second Amended Complaint filed May 13, 2015; and

6.      Upon receipt of the above-described documents, the Court should direct the United States Marshal to serve the above-named Defendant pursuant to Federal Rule of Civil Procedure 4 without payment of costs.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within **fourteen (14) days** after being served with these Findings and Recommendations, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:    __June 3, 2015__           /s/ *Michael J. Seng*
                                     UNITED STATES MAGISTRATE JUDGE